## IN RE WELFARE OF KEITH DUANE JAHNKE ALLE AND ANOTHER.

230 N. W. 2d 574.

May 30, 1975—No. 44739.

*William W. Essling*, for appellant.

*Jerrold J. Sullivan* and *Edward A. Towey*, for respondent.

*James A. Gallagher*, pro se, for guardian ad litem.

Heard before Otis, Peterson, and MacLaughlin, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE. ·

This litigation arises from a complex and bitter set of personal relationships. Shirley Ann Jahnke Alle was formerly married to Duane K. Jahnke. The couple had two sons, Keith Duane and Douglas Ray. The Jahnkes were divorced in 1961 and custody of the two sons was given to their mother.

Approximately 2 weeks after the divorce became final, Shirley Jahnke, the natural mother of Keith and Douglas, married Lyle Vernon Alle. No children were ever born of this marriage. Although the marriage had its share of marital discord, Shirley and Lyle Alle and the children all lived together as a family for approximately 11 years. The two boys came to know Lyle Alle as their father. They took his name and thereafter have been known as the "Alle" children.

In an effort to reduce the friction in the marriage relationship, Mr. and Mrs. Alle agreed to change their residence. Mrs. Alle also attempted to persuade Mr. Alle to formally adopt Keith and Douglas.

In June of 1971, Lyle Alle initiated proceedings to legally adopt the two children. In so doing, he consulted on several occasions with the Ramsey County Welfare Department, which was investigating the adoption petition. He consulted with the natural father of the children and arranged to have the natural father pay the cost of the adoption. He consulted with an attorney, and he appeared before the juvenile court with the children at the adoption hearing. Formally, under oath, he expressed his wish to adopt the children, indicating no reserva-

tions. The decree of adoption was made and entered on October 13, 1971.

The family bought a new home in St. Paul at about the time of the adoption decree. Marital discord, which seemingly had abated at the time of the initiation of the adoption process, soon reappeared. On January 21, 1972, the adoptive father, as plaintiff, commenced an action for divorce. A decree of divorce was entered although the court continued its temporary order relating to custody, child support, and other matters until resolution of the case now at bar.

On January 25, 1972, the adoptive father initiated proceedings to terminate his parental rights pursuant to Minn. St. 260.221. The petition was contested, and the matter was heard in the District Court of Ramsey County, Juvenile Court Division.

On April 20, 1973, the juvenile court entered its findings of fact, conclusions of law, and order for judgment. The court concluded that the petitioner-adoptive father had shown "good cause" for termination of his parental rights under Minn. St. 260.221(a) and ordered his parental rights terminated. According to the findings, the adoption had not been intended by the mother to solidify the family, but was based upon financial expediency; while the adoption proceeding was pending, the natural mother had been simultaneously preparing to separate from the petitioner; the adoption proceeding had not been entered into in good faith; and the adoption was void of necessary bilateral parental commitment to provide a stable family unit of mutual parental love. Following denial of a motion for amended findings or a new trial, the natural mother appealed and the guardian ad litem for the children filed a notice of review.

In terminating the parental relationship of the adoptive father, the trial court relied on Minn. St. 260.221(a).[1] Required

---

[1] Minn. St. 260.221: "The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

"(a) With the written consent of parents who for good cause desire to terminate their parental rights; or

was a finding that the adoptive father voluntarily desired to terminate his parental relationship, which in this case is uncontested, and that good cause existed for such a termination.

The meaning of "good cause" in this statute has never been judicially construed. It is instructive, however, to examine the purpose and intent of the statute. The statute is generally aimed at two ends: First, to enable the judicial system to legally remove a child from a destructive or unhealthy home environment without the consent of the natural parents, and, secondly, to facilitate adoption procedures by providing a means by which existing parental rights may be voluntarily terminated.

The showing of "good cause" made below is consistent with neither of these purposes. The trial court based its findings on the motivations and circumstances attendant upon the original adoption proceeding. These considerations have no relationship to the policies underlying Minn. St. 260.221. Nor can it be said that

---

"(b) If it finds that one or more of the following conditions exist:

(1) That the parents have abandoned the child; or

(2) That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection; or

(3) That, although the parents are financially able, they have substantially and continuously neglected to provide the child with necessary subsistence, education, or other care necessary for his physical or mental health or morals or have neglected to pay for such subsistence, education or other care when legal custody is lodged with others; or

(4) That the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, or other conduct found by the court to be likely to be detrimental to the physical or mental health or morals of the child; or

(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; or

(6) That in the case of an illegitmate child the person is not entitled to notice of an adoption hearing under section 259.26 and either the person has not filed a notice of his intention to retain parental rights under section 259.261 or that such notice has been successfully challenged."

it is in the best interests of the children that their adoptive father's parental rights be terminated. Mr. and Mrs. Alle have now obtained a divorce, and Mrs. Alle has been granted temporary custody of the children. The children wish to be able to look to their legal father for financial support; it surely cannot be in their best interests to have that avenue of support terminated. We hold, therefore, that Minn. St. 260.221(a) was not available to terminate Mr. Alle's parental relationship with his adopted sons.

We think, however, that the considerations relied upon by the trial court to justify the termination might more logically apply to a direct attack on the adoption proceeding itself. Although the action is a rare one, there is nothing to prevent a court of competent jurisdiction from directly vacating an order of adoption under proper circumstances, as where entry of the decree was brought about by fraud, misrepresentation, or undue influence.[2] Phillips v. Chase, 203 Mass. 556, 89 N. E. 1049 (1909); Arnold v. Howell, 98 Cal. App. 2d 202, 219 P. 2d 854 (1950); State ex rel. Bradshaw v. Probate Court, 225 Ind. 268, 73 N. E. 2d 769 (1947); Buttrey v. West, 212 Ala. 321, 102 So. 456 (1924); County Dept. Of Public Welfare v. Morningstar, 128 Ind. App. 688, 151 N. E. 2d 150 (1958); 2 Am. Jur. 2d, Adoption, § 76. See, generally, Annotation, 2 A. L. R. 2d 887, §§ 2, 8, 11; cf. Minn. St. 259.30.

To be sure, there is a great policy concern in making adoptions conclusive and final. Nevertheless, if Mr. Alle is able to suf-

---

[2] Counsel for Mrs. Alle correctly argues that an adoption decree may not be subsequently collaterally attacked by a party to the adoption proceeding. Kenning v. Reichel, 148 Minn. 433, 182 N. W. 517 (1921); 2 Am. Jur. 2d, Adoption, §§ 68, 72; Note, 36 Minn. L. Rev. 383. Once the adoptive parents invoke the powers of the court, obtain the decree they ask for, and take the child into the family, they are subsequently barred from denying the legality and validity of the adoption proceeding in a collateral proceeding. This is different, however, than directly attacking the decree on the ground that it was originally fraudulently obtained.

ficiently demonstrate that the original adoption decree was obtained fraudulently, then he should be entitled to relief. That relief may consist of a direct vacation of at least that part of the adoption decree that established the legal rights and obligations of Mr. Alle with respect to these children.

The original decree of adoption also served to terminate the parental relationship of the natural father. Minn. St. 259.29. Thus, if the trial court vacates Mr. Alle's adoptive status, the status of the natural father must also be determined.[3] If Mr. Alle's adoptive status is voided, the trial court must determine, first, whether the natural father was a party to the fraud perpetrated upon the court, and, secondly, if so, whether it be in the best interests of the children to have their parental relationship with their natural father restored. If the trial court so holds, those rights and obligations may be re-established. It is axiomatic that no party may claim reliance on his own fraud.

Accordingly, we reverse the decision below and remand this matter to the juvenile court for proceedings not inconsistent with this opinion.

Reversed and remanded.

[3] Since the natural father had a statutory right to be given notice of and be heard at the original adoption hearing (Minn. St. 259.26, subd. 1), it follows that he should be entitled to be given notice and to be heard when the decree is subsequently attacked.