268 N.W.2d 424 (1978)
In the Matter of the WELFARE OF J.M.S., a Child.
Lois Anne SHARP, petitioner, Appellant,
v.
LUTHERAN SOCIAL SERVICE OF MINNESOTA, Respondent.
No. 48170.
Supreme Court of Minnesota.
July 7, 1978.
*425 Hennepin County Bar Ass'n Legal Advice Clinics by Robins, Davis & Lyons and James R. Safley, Minneapolis, for appellant.
Kempf & Miller, Minneapolis, for respondent.
Heard before ROGOSHESKE, WAHL, and GODFREY, JJ., and considered and decided by the court en banc.
OTIS H. GODFREY, Jr., Justice.[*]
Upon the petition of Lutheran Social Services (agency) and with the written consent of appellant, Lois Sharp, her parental rights to her 1-year-old, illegitimate child were terminated on May 13, 1977, by an order of the Hennepin County District Court, Juvenile Division. That order also terminated the parental rights of the unknown *426 father and transferred legal custody and guardianship to the agency. Ten days later the mother moved to vacate the order terminating her parental rights. Testimony was thereafter taken before a referee on 3 separate days, and the referee recommended that the order stand. On August 16, 1977, the juvenile court issued its findings of fact, conclusions of law, and order for judgment denying the motion to vacate the termination of parental rights. This court granted appellant's petition for discretionary review pursuant to Rule 105, Rules of Civil Appellate Procedure. We affirm.
The termination of Lois Sharp's parental rights by the juvenile court was the culmination of a long series of counselling sessions between social workers of the agency and the mother. During her early pregnancy, Lois first considered abortion but later asked the agency to help her make plans for surrender of the child for adoption at birth. She signed a Foster Care Agreement at the hospital shortly after the birth of the child in preparation for the adoption. After signing the agreement, however, and under some pressure from her parents to keep the child, Lois changed her mind and took the child home with her. She lived alone with her child in an apartment, supporting her on AFDC until the May 13, 1977, termination hearing. It is uncontroverted that the mother provided good care for the child during this 1-year period.
Lois, after the birth of her child and prior to December 16, 1976, received personal and child-care counselling on at least 12 occasions from Margaret Waller, a social worker for the agency. During this period, the mother talked about adoption but seemed somewhat uncertain about making a decision. On December 16, 1976, however, she called Mrs. Waller and said that she had determined it was best to have her child placed for adoption. She specifically requested a direct surrender to the adoptive parents and rejected all suggestions of temporary foster care. Lois also said that she was not going to tell her parents of her decision until after the termination of her parental rights, and she requested the agency not to inform them. Her stated reason was that she knew her parents would be upset and she did not want them to influence her decision as they had in persuading her to take the child home from the hospital.
The mother remained firm in her decision to surrender her child for adoption throughout 24 further recorded contacts in December and the following months, during which time Mrs. Waller and Lois discussed the decision to surrender her child for adoption. Lois Sharp cooperated fully with the agency, personally talked on the phone to the prospective adoptive mother, filled out a feeding-and-sleeping schedule for the child, released medical information, and brought her daughter to the agency every day for a period of 4 weeks, starting April 11, 1977, in order to help the child's adjustment to the future adoptive parents.
On April 22, 1977, Lois signed a consent to adoption and transfer of custody of the child to the agency and was served with notice of a May 4, 1977, hearing to terminate her parental rights by consent and upon petition of the agency. The petition of the agency alleged the following facts as cause for termination of Lois Sharp's parental rights by consent under Minn.St. 260.221(a):
"a. Said child is illegitimate.
"b. Mother cannot provide a home for the child and is unable to assume responsibility for the child's care."
During her testimony at the May 4 hearing, Lois was ambivalent as to final termination of her parental rights, and the matter therefore was continued indefinitely by the referee. The following day, Lois called her social worker and requested the social worker to schedule another court hearing within a week, stating that she had not changed her determination to have the child adopted.
On May 13, 1977, Lois had her daughter's things packed and the child was taken to the agency for delivery to the prospective adoptive parents. At the hearing on that date, the mother testified that she understood *427 the finality of a termination order; she waived her right to a lawyer; and she voluntarily consented to termination of her parental rights. She did not state her specific reasons for consenting to termination, and no testimony was taken to establish her inability to provide a home or to care for her child.
Lois first told her parents she had terminated her parental rights after the hearing on May 13. They were upset and apparently urged that legal proceedings be taken to get the child back. A few days thereafter she retained counsel who filed a petition in the juvenile court to vacate the termination order.
The following issues are presented for review:
(1) Did the juvenile court have sufficient grounds to terminate the parental rights as of the May 13, 1977, hearing?
(2) May a parent withdraw her voluntary consent after final termination of her parental rights under § 260.221(a)?
1. We hold that the evidence amply supports the juvenile court's findings and conclusions that grounds for termination of the mother's parental rights under § 260.221(a) did exist at the time of the May 13 termination order. Section 260.221 provides in part:
"The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:
"(a) With the written consent of parents who for good cause desire to terminate their parental rights * * *."
To establish grounds for termination under this section thus requires a showing of (a) voluntary consent in writing and (b) good cause. The evidence is overwhelming that the mother's consent to termination was informed and voluntary when given on May 13, 1977, the date of the hearing. She repeatedly testified at the later hearings that she had consented to termination of her own free will and with full knowledge that termination would be final. The final nature of termination of her parental rights had been discussed with her at length by social workers of the agency on numerous occasions. While the agency's petition as filed set forth additional grounds, i. e., "[s]aid child is illegitimate" and "[m]other cannot provide a home for the child and is unable to assume responsibility for the child's care," the statute does not require such a finding where there is a written, voluntary consent to termination. The "good cause" of parents who desire to terminate their parental rights is personal and could be based on a variety of facts and circumstances. It should be pointed out that the child in this case was not "taken" from the mother because she was at fault or in any way unfit as a parent. It was her voluntary, informed, and considered decision to place her child for adoption that was the basis of the juvenile court's order and decision. We recognize the close emotional attachment between parent and child, and in all cases the best interest of the child must be of paramount concern to the court.
At the termination hearing on May 13, 1977, no inquiry was made into the mother's specific reasons for terminating her parental rights to establish good cause, apparently because it was not an adversary proceeding. The finding in the order of that date that the mother was "unable to assume responsibility for the child's care" was not based upon testimony in that regard. We do not condone such procedures, and we suggest that in all future termination hearings under § 260.221(a), juvenile courts should make specific inquiry to verify that the statements in the petition establish "good cause" and should make written findings of fact based upon the evidence that "good cause" exists. Nevertheless, we are convinced that the failure to follow those procedures at the termination hearing in this case is not grounds for reversal. Appellant had a full hearing in court after the termination at which she was given the opportunity to present extensive evidence. Her own testimony established that she voluntarily consented to termination, that she did have "good cause" in the form of a desire to provide two adoptive parents for her child, and that she would have so testified on May 13, 1977.
*428 Where the findings of fact of the juvenile court are supported by substantial evidence and are not clearly erroneous, they will not be reversed. Rule 52.01, Rules of Civil Procedure. See, also, In re Welfare of Kidd, 261 N.W.2d 833 (Minn.1978); In re Estate of Balafas, 293 Minn. 94, 198 N.W.2d 260 (1972).
While Lois had given the child adequate care, we find, as did the juvenile court, that her determination that it was in the best interest of her child to have two adoptive parents did provide "good cause" under § 260.221(a) to terminate her parental rights.
2. Appellant seeks permission to withdraw her consent to termination under Minn.St. 259.24, subd. 6, which provides:
"After a petition has been filed, the consent to the adoption may be withdrawn only upon order of the court after written findings that such withdrawal is for the best interest of the child."
In the instant case, the juvenile court found that it is in the best interest of the child that the termination of parental rights not be vacated. Those findings are affirmed. Furthermore, this section has no application to proceedings under § 260.221, whereby parental rights are finally terminated before commencement of any adoption proceedings under Minn.St. c. 259. We can find no precedent or statutory authority for withdrawing consent after an order terminating parental rights has been entered pursuant to § 260.221(a). As stated in In re Welfare of Alle, 304 Minn. 254, 257, 230 N.W.2d 574, 576 (1975), one of the purposes of § 260.221 is "to facilitate adoption procedures by providing a means by which existing parental rights may be voluntarily terminated" before commencement of adoption proceedings.
The termination order under § 260.221 is a final adjudication of parental rights which can only be set aside upon a showing of fraud, duress, or undue influence. Those factors are not present in this case. The voluntariness of the mother's consent and the existence of good cause at the time of termination are clearly established.
The order of the juvenile court denying the motion to vacate is affirmed.
Affirmed.
OTIS, J., took no part in the consideration or decision of this case.
NOTES
[*] Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.