**In the Matter of the WELFARE OF D.C.M., Child.**

**No. C8–88–2676.**

Court of Appeals of Minnesota.

Aug. 8, 1989.

Review Denied Sept. 21, 1989.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James A. Terwedo, Scott County Atty., Kathryn A. Santelmann, Peggy A. Flaig, Asst. County Attys., Shakopee, for appellant.

R. Kathleen Morris, Shakopee, for respondents.

Thomas J. O'Connor, Minneapolis, guardian ad litem for the child.

Susan Bates Gegen, Lakeville, for the child.

Heard, considered, and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

On December 1, 1988, the trial court granted respondent parents' petition for

voluntary termination of parental rights. Scott County appealed. We affirm.

## FACTS

D.C.M. was born on July 26, 1973, was removed from the home of his biological parents when he was nearly two years old, and placed in a series of foster homes and potential adoption situations. None was permanent. The parental rights of D.C.M.'s biological parents were terminated in 1982. During this time, D.C.M. had emotional and behavioral problems for which he received counseling.

Steven and Kathleen Miles (the Miles) took D.C.M. into their home on June 25, 1984, and adopted him on May 31, 1985. The Miles knew that D.C.M. was a boy with emotional problems. The Miles had two other adopted children, one older and one younger than D.C.M.

D.C.M.'s problems continued after the adoption and, as a result, began counseling with a therapist in May of 1986 and continued until the time of trial. The Miles felt that they were unable to cope with D.C.M.'s problems and the way his behavior affected their family. Respite care allowed the Miles to have D.C.M. removed from their home for one weekend each month.

The court subsequently granted the Miles' petition to terminate parental rights.

## ISSUE

Did the trial court err in granting the petition to terminate the parental rights?

## ANALYSIS

■ In a termination case, the standard of review is whether the findings of fact of the trial court are supported by substantial evidence and are not clearly erroneous. *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980) citing *Matter of Welfare of Sharp*, 268 N.W.2d 424, 428 (Minn.1978).

■ Parental rights may be terminated with the written consent of a parent who for good cause desires termination. Minn. Stat. § 260.221, subd. 1(a) (1988). Although not defined in the statute, "good cause" has been applied in *In re Welfare of Alle*, 304 Minn. 254, 230 N.W.2d 574 (1975), in which the Minnesota Supreme Court examined the purpose and intent of the statute to determine when good cause could be found.

> The statute is generally aimed at two ends: First, to enable the judicial system to legally remove a child from a destructive or unhealthy home environment without the consent of the natural parents, and, secondly, to facilitate adoption procedures by providing a means by which existing parental rights may be voluntarily terminated.

*Id.* at 257, 230 N.W.2d at 576. The trial court concluded that the Miles' inability to parent D.C.M. constituted good cause for termination. *See, e.g., In re Welfare of M.A. and J.A.,* 408 N.W.2d 227, 233 (Minn. Ct.App.1987), *pet. for rev. denied* (Minn. Sept. 18, 1987) (one basis for involuntary termination was parent's lack of skills to deal with special needs child).

■ Scott County asserts that good cause does not exist unless an adoption is imminent. However, nowhere in the statute is imminent adoption an element of a termination proceeding. *In re Welfare of P.J.K. and J.L.K.,* 369 N.W.2d 286, 292 (Minn.1985).

■ Once good cause is established, the best interests of the child become the paramount consideration. Minn.Stat. § 260.221, subd. 4. In their petition the Miles cite a number of incidents which illustrate D.C.M.'s behavioral problems. The affirmative evidence supporting termination includes the recommendations of D.C.M.'s long-term therapist, a private psychologist who saw D.C.M. for four consultations, D.C.M.'s guardian ad litem, and D.C.M.'s attorney. Only two individuals recommended that parental rights not be terminated—a county social worker who had minimum contacts with D.C.M. and a

psychologist who did not meet with D.C.M. but reviewed the records.

The Miles' rejection of D.C.M. appears complete and no evidence suggests that it is reversible. Subjecting D.C.M. to additional reunification counseling is not in his best interests. We find that the determination of the trial court is supported by substantial evidence.

## DECISION

The trial court properly granted the petition for voluntary termination of parental rights.

Affirmed.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent. In their petition requesting termination of parental rights, the Miles cite a number of incidents which illustrate D.C.M.'s behavioral problems, but it is clear that the primary reason the Miles seek termination is because they feel an emotional strain and not because they seek to better D.C.M.'s position. Social workers and therapists indicated that D.C.M. was a child with many problems and that these problems were taking a toll on the Miles emotionally and on their family relationships. D.C.M. refers to the Miles as his parents but has stated that "if they don't want me, I don't want them," thereby indicating a reaction to the rejection conduct of the Miles. The Miles also state that D.C.M. would be eligible for financial assistance if parental rights were terminated, apparently feeling such assistance would be to his advantage.

I can well sympathize with the respondent parents. They exhibited exemplary virtues of concern and compassion when they adopted D.C.M., knowing he had emotional and behavioral problems.

However, this is a judicial proceeding. We are not a social service agency. The statute requires that the best interests of the child be paramount in any proceeding to terminate parental rights. Minn.Stat.

§ 260.221, subd. 4. The emphasis in the petition and the order granting the petition is upon lessening the Miles' burdens rather than considering what will be best for D.C.M. There is insufficient evidence that termination is in D.C.M.'s best interest.

The last statutory requirement is that the court make specific findings regarding efforts to reunite the family. Minn.Stat. § 260.221, subd. 5. There are no specific findings of attempts to reunite the family in the court's order granting the petition.

I would reverse.