**In the Matter of the Welfare of J.D.N., Child.**

**No. C8–93–425.**

Court of Appeals of Minnesota.

July 27, 1993.

Tim Faver, Beltrami County Atty. and Janis L. Barnes, Asst. County Atty., Bemidji, for appellant county.

Carl Baer, Kief, Fuller, Baer, Wallner & Rodgers, Ltd., Bemidji, for respondent father.

Kathy Simenson, Leonard, guardian ad litem.

Considered and decided by DAVIES, P.J., and HUSPENI, and HARTEN, JJ.

**OPINION**

HUSPENI, Judge.

Appellant Beltrami County challenges the juvenile court's order for voluntary termination of father's parental rights. We reverse.

**FACTS**

J.D.N. was born in May 1985 to Janice N. and Lawrence S. In June 1987, Janice married Paul N., and in August 1988 Paul adopted J.D.N. Paul and Janice separated in November 1990, and in September 1991 Paul petitioned to voluntarily terminate his parental rights to J.D.N. Faced with the loss of Paul's potential financial contribution, appellant Beltrami County intervened, and a guardian ad litem was appointed for J.D.N.

A contested hearing was held in Beltrami County Juvenile Court. Four witnesses testified at the hearing. Paul testified that he adopted J.D.N. to strengthen his relationship with Janice, that he had not seen J.D.N. since the summer of 1991, and that his only other contact with J.D.N. was a Christmas card. Paul claimed that he could have seen J.D.N. since then, but chose not to in part because he did not want to cause J.D.N. confusion. Paul also testified that he had never made any voluntary payment of child support to J.D.N. and that money was involuntarily withheld from his paycheck. Paul admitted that he has made no attempt to pay child support arrearages although he is currently employed.

Janice testified that Paul was "emotionally mostly absent" as a parent. Janice stated that Paul saw J.D.N. only three times from the time of the separation, and that Paul has neither contacted J.D.N. nor provided him with clothing, food, or other support since then. Janice testified that if she were to die, she would like her brother to care for J.D.N. She also stated that J.D.N. feels resentful because of Paul's abandonment.

Janice stated that she began receiving AFDC from Beltrami County shortly after she separated from Paul. She is currently

a graduate student, and needs only to complete four credits and her thesis to receive a master's degree.

A Beltrami County child support officer confirmed that Paul is currently in arrears on his child support obligation, and testified as to the amount and frequency of Janice's AFDC support.

Finally, J.D.N.'s guardian ad litem testified that Paul has been struggling with emotional problems and that she did not believe that Paul was acting as a "father figure" for J.D.N. She concluded that given Paul's past history of support, it was in J.D.N.'s best interest to terminate Paul's parental rights.

Based on this evidence, the court ordered that Paul's parental rights be terminated. The court ordered that the termination be retroactive and forgave Paul's support arrearages.

## ISSUE

Did the juvenile court err in ordering that Paul's parental rights be voluntarily terminated?

## ANALYSIS

"As a matter of law, termination of parental rights is not a preferred action." *In re Welfare of M.G.*, 407 N.W.2d 118, 120 (Minn.App.1987), *quoted in In re Welfare of R.T.B.*, 492 N.W.2d 1, 3 (Minn.App.1992). Due to the gravity of the proceedings, * * * a reviewing court must exercise great caution. This court must "closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing."

*R.T.B.*, 492 N.W.2d at 3 (citation omitted) (quoting *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980)).

Minn.Stat. § 260.221, subd. 1 (1990) provides two separate grounds upon which a juvenile court may terminate parental rights. First, a juvenile court may terminate parental rights "[w]ith the written consent of a parent who for good cause desires to terminate parental rights." *Id.*, subd. 1(a). Second, a juvenile court may involuntarily terminate a parent's rights if it finds that one or more of a list of specifically enumerated circumstances exist.[1] *Id.*, subd. 1(b). The provisions of subdivision 1(a) and 1(b) are distinct and circumstances that justify involuntary termination of parental rights under subdivision 1(b) do not necessarily justify the voluntary termination of parental rights under subdivision 1(a). *See In re Welfare of K.T.*, 327 N.W.2d 13, 17 (Minn.1982) (cases involving involuntary termination of parental rights do not apply to cases involving voluntary termination of parental rights).

The juvenile court specifically found "[t]hat [Paul] has not visited, talked to, or communicated with [J.D.N.] since the summer of 1991"; "[t]hat Paul['s] * * * failure to pay child support as ordered is without good cause"; "that Paul * * * is unfit and unwilling to be a parent to [J.D.N.]," and that Paul has consistently failed to "appropriately care for the ongoing physical, mental and emotional needs of [J.D.N.]." The juvenile court's findings as a whole clearly indicate that the court based its conclusion that good cause existed for the termination upon circumstances that would justify *in-*

---

**1.** A court may involuntarily terminate a parent's rights if it finds that one or more of the following conditions exist:

    (1) the parent has abandoned the child;
    (2) the parent has "substantially, continuously, or repeatedly failed to comply with the duties imposed upon the parent";
    (3) the parent has been ordered to contribute to the support of the child and has failed to do so without good cause;
    (4) the parent is "palpably unfit" and is unable to care appropriately for the "ongoing physical, mental, or emotional needs of the child";

    (5) the parent has failed to correct the conditions leading to a determination of neglect, dependency, or child in need of protection or services;
    (6) the parent has been convicted of causing the death of another of the parent's children;
    (7) the child's mother was not married to the child's father when the child was conceived or born and either the parent has not filed notice of intent to retain parental rights or the notice has been successfully challenged;
    (8) the child is neglected and in foster care.
Minn.Stat. § 260.221, subd. 1(b) (1990).

*voluntary* termination. Our concern is whether these findings are sufficient to establish "good cause" for a *voluntary* termination of parental rights. We conclude they are not.

■ Under subdivision 1(a), a juvenile court may voluntarily terminate parental rights if it finds "good cause" for the termination. Minn.Stat. § 260.221, subd. 1(a). While the section does not define "good cause," this term was construed by the Minnesota Supreme Court in *In re Welfare of Alle,* 304 Minn. 254, 257, 230 N.W.2d 574, 576 (1975). The petitioner in *Alle* sought to voluntarily terminate his parental rights to his adopted children. *Id.* at 256, 230 N.W.2d at 576. The trial court found that the children's natural mother had planned to separate from the petitioner at the time of the adoption and had not entered the adoption in good faith. *Id.* Nevertheless, the supreme court held that there was not "good cause" for termination of petitioner's parental rights. *Id.* at 257, 230 N.W.2d at 576. The court explained:

> The statute is generally aimed at two ends: First, to enable the judicial system to legally remove a child from a destructive or unhealthy home environment without the consent of the natural parents, and, second, to facilitate adoption procedures by providing a means by which existing parental rights may be voluntarily terminated. The showing of "good cause" below is consistent with neither of these purposes.

*Id.* The court went on to note that:

> [T]he children wish to be able to look to their legal father for financial support; it is surely not in their best interest to have that avenue of support terminated.

*Id.* at 258, 230 N.W.2d at 577.

■ The termination of Paul's parental rights is not consistent with either of the policies discussed in *Alle.* Paul does not seek to terminate his parental rights in order to facilitate J.D.N.'s adoption. Nor will the termination of Paul's parental rights remove J.D.N. from a destructive or unhealthy home environment, since Paul is the noncustodial parent of J.D.N.

This court has held that imminent adoption is not a prerequisite for voluntary termination of parental rights. *In re Welfare of D.C.M.,* 443 N.W.2d 853, 854 (Minn.App. 1989), *pet. for rev. denied* (Minn. Sept. 21, 1989). However, *D.C.M.* is clearly distinguishable from the case at bar and must be held to its unique facts. In *D.C.M.,* both custodial parents sought to terminate their parental rights because "they felt that they were unable to cope with D.C.M.'s [emotional and behavioral] problems and the way his behavior affected their family." *Id.*

■ In contrast to *D.C.M.,* the parent seeking to terminate parental rights in this case is not a custodial parent. Janice's desire to curtail Paul's non-nurturing, and possibly disruptive influence upon J.D.N. can be accomplished through less drastic means. While parents ideally will strive to limit the effect of their marriage dissolution upon their individual relationship with their children, problems unfortunately do arise in establishing meaningful and nurturing visitation between children and a noncustodial parent. As a noncustodial parent, Paul has a right only to such visitation as is in J.D.N.'s best interests. *See* Minn.Stat. § 518.175 (1990). Janice has the opportunity to seek the assistance of the court to restrict or even deny visitation that is "likely to endanger the child's physical or emotional health or impair the child's emotional development." *Id.; see also Griffin v. Van Griffin,* 267 N.W.2d 733, 735 (Minn.1978) (court may deny visitation upon "persuasive evidence" that it would not serve best interests of the child).

Relief under section 518.175, with or without accompanying counseling, would be just as effective in addressing concerns about Paul's relationship with J.D.N. as termination of Paul's parental rights would be. Such alternative relief would also preserve for J.D.N. vitally important rights that flow from the legal relationship with his father. These rights include the right to receive social security benefits, 42 U.S.C.A. §§ 416(e), (h)(2)(A) (West 1991); the right to inherit through intestate succession, Minn.Stat. §§ 524.2–103(1), 524.2–

109(1) (1992) (provisions defining an adoptive child as a child of the parent and enumerating child's share of intestate estate); and the right to recover in a wrongful death action, Minn.Stat. § 573.02, subd. 1 (1992) (recovery for next-of-kin). Of the most immediate importance, of course, is the right of the child to receive support from his father. Minn.Stat. § 518.551, subd. 5 (1992) (child support guidelines).

▬▬▬ Rights that flow to the child from the parent and child relationship certainly include visitation with the noncustodial parent, but rights other than visitation are not dependent upon visitation. Minn.Stat. § 518.612 (1990); *see England v. England,* 337 N.W.2d 681, 684 (Minn.1983) (deprivation of custody or visitation is not a proper factor to consider in determining or enforcing support obligations). Just as non-willful failure to pay support should not be a ground for denial of visitation, neither should court-ordered restriction or denial of visitation in itself be a sufficient ground for even temporary suspension of child support, much less its permanent elimination.

▬▬▬ In any proceeding under section 260.221, "the best interests of the child must be the paramount consideration." Minn.Stat. § 260.221, subd. 4 (1990). Given the policy objectives of the termination of parental rights statutes recognized in *Alle,* we believe that the best interests of a child are not served by permitting a noncustodial parent to terminate parental rights voluntarily unless that termination is accomplished to facilitate adoption of the child. Adoption assures that the child will not lose valuable rights to support, social security and intestate inheritance. As the natural parent is relieved of the corresponding obligations arising from these rights, an adoptive parent assumes them.

On the record before the juvenile court, Paul failed to establish by clear and convincing evidence that good cause exists for the voluntary termination of his parental rights. *See R.T.B.,* 492 N.W.2d at 3. While termination of parental rights may

appear to serve Paul's best interests, that cannot be and never has been an appropriate consideration under the statute. His benefit in being relieved of any obligation to J.D.N. is accompanied by an immediate and substantial detrimental effect on J.D.N. J.D.N. will, at such time as current AFDC benefits cease, be forced to look solely to his custodial parent Janice to meet all of his needs. J.D.N.'s rights have been cast aside by the decision of the juvenile court and that decision cannot be affirmed on appeal.

## DECISION

Petitioner has failed to demonstrate "good cause" for the voluntary termination of his parental rights. The juvenile court's order terminating parental rights is reversed.

**Reversed.**

HARTEN, Judge (concurring specially).

I concur with the application of law and result in this case. I do not, however, join the court's opinion insofar as it narrows good cause for voluntary termination of parental rights to cases where, as the court says, "termination is accomplished to facilitate adoption of the child." This narrowing functionally amends Minn.Stat. § 260.221, subd. 1(a) and involves policy considerations more appropriately weighed by the legislature. Accordingly, our decision is more properly confined to the facts in the case before us.