*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0419**

In the Matter of the Welfare of the Child of:
A. S. R. and M. J. I., Parents

**Filed August 24, 2015
Affirmed
Hooten, Judge**

Chippewa County District Court
File No. 12-JV-14-611

Krystal M. Lynne, Stermer & Sellner, Chtd., Montevideo, Minnesota (for appellant)

David M. Gilbertson, Chippewa County Attorney, Montevideo, Minnesota (for respondent county)

Susan Elaine Peterson Bones, Granite Falls, Minnesota (guardian ad litem)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from an order terminating his parental rights, appellant father argues that the district court erred by determining that termination of his parental rights was in the child's best interests. We affirm.

# FACTS

In January 2012, appellant father M.J.I. pleaded guilty to one count of second-degree criminal sexual conduct in connection with allegations that he had sexually abused his minor stepson.  In a later interview with police, appellant further admitted that he had also sexually abused his son and his daughter, both of whom were minors at the time.  Appellant was sentenced to a stayed prison term and 25 years of probation, and was required to attend sex offender treatment as part of his probation.  The district court also prohibited appellant from having contact with minors unless approved by his therapist and/or his probation officer.  Since sentencing, appellant has been terminated from his sex offender treatment program three times, in violation of the terms of his probation.

Appellant is the father of J.J.I., the subject of this action, who was born on May 8, 2014.  Appellant was allowed to be present for the birth of the child in accordance with a safety plan approved by appellant's sex offender treatment program and his probation officer.  However, when J.J.I.'s mother A.S.R.[1] was discharged from the hospital, appellant went to A.S.R.'s home with her and J.J.I.  This contact was not authorized by the safety plan.  A few months later, A.S.R. brought J.J.I. to visit appellant's daughter, who lives in the same building as appellant.  In an interview with a social worker, appellant admitted that he helped A.S.R. carry J.J.I. up to his daughter's apartment.

On October 10, 2014, respondent Chippewa County filed a petition to terminate appellant's parental rights to J.J.I. based on his prior conviction of criminal sexual conduct.  The petition noted that respondent had conducted an investigation into

---

[1] A.S.R. was not a party to the termination action which is before this court on appeal.

appellant and "could not find any compelling reasons why filing a termination of parental rights on [appellant] would not be in the best interest" of J.J.I. Appellant entered a denial to the petition, and a trial was held at which a social worker, A.S.R., and appellant testified.

In addition to testimony about the events described *supra*, the witnesses spoke about the relationship between appellant and A.S.R. and appellant's potential relationship with J.J.I. The social worker testified that she believed that A.S.R. will continue to be in a relationship with appellant and that A.S.R. had indicated to her that she wanted appellant to act as a father for J.J.I. A.S.R. testified that J.J.I. would benefit from having appellant in his life if appellant could be rehabilitated and that there was a chance that she and appellant would have more children in the future for J.J.I. "to have companionship or a sibling." Appellant testified that termination was not in J.J.I.'s best interests because he did not want to "walk[] away from him," and he wished to be able to talk to J.J.I. when he was older.

A.S.R. testified that she had been advised by respondent that it would be seeking either a transfer of custody or a termination of her parental rights, and she indicated that she was likely to agree to a transfer of custody of J.J.I. to her parents. The social worker confirmed that a parenting assessment of A.S.R. had recommended that custody of the child be transferred to A.S.R.'s parents, and the social worker agreed that this transfer would be in J.J.I.'s best interests. Appellant indicated that he would agree to a petition for the transfer of custody of J.J.I. to A.S.R.'s parents.

On February 13, 2015, the district court terminated appellant's parental rights to J.J.I. The district court concluded that termination was appropriate under Minn. Stat. § 260C.301, subd. 1(b)(9) (2014), based upon appellant's conviction of second-degree criminal sexual conduct. The district court further concluded that respondent had not been required to provide reasonable services and that termination was in the best interests of J.J.I. This appeal followed.

**D E C I S I O N**

Appellant challenges the district court's decision to terminate his parental rights. Parental rights may only be terminated for "grave and weighty reasons." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012) (quotation omitted). We will affirm if a statutory ground for termination is supported by clear and convincing evidence and termination of parental rights is in the minor child's best interests. *In re Children of T.R.*, 750 N.W.2d 656, 661 (Minn. 2008). We review the district court's findings for clear error and "review its determination of whether a particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion." *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

A district court may involuntarily terminate parental rights when the parent is convicted of an offense requiring registration as a predatory offender under Minn. Stat. § 243.166, subd. 1b(a)–(b) (2014). Minn. Stat. §§ 260.012(g)(5), 260C.301, subd. 1(b)(9) (2014). Moreover, the county is relieved from having to make reasonable efforts to rehabilitate the parent and reunify the parent with the child if the district court

4

determines that the termination petition states a prima facie case that the parent has committed an offense requiring predatory offender registration. Minn. Stat. § 260.012(a)(6) (2014).

Here, appellant was convicted of second-degree criminal sexual conduct under Minn. Stat. § 609.343, subd. 1(g) (2004), which is an offense requiring him to register as a predatory offender. Minn. Stat. § 243.166, subd. 1b(a)(1)(iii) (Supp. 2005). The district court found after the admit/deny hearing that the petition adequately stated a prima facie case for termination on the basis that appellant was convicted of an offense requiring registration as a predatory offender. Appellant does not challenge the district court's findings that termination was warranted under section 260C.301, subdivision 1(b)(9), or that reasonable efforts were not required in this case. Instead, appellant argues that the district court erred by determining that termination of his parental rights was in J.J.I.'s best interests.

District courts are required to give "paramount consideration" to the best interests of the child when deciding whether to terminate parental rights. Minn. Stat. § 260C.301, subd. 7 (2014); *see J.R.B*, 805 N.W.2d at 902 ("[C]onflicts between the rights of the child and rights of the parents are resolved in favor of the child."). A district court does this by weighing three primary factors: (1) the child's interest in maintaining the parent-child relationship; (2) the parent's interest in maintaining that relationship; and (3) any competing interest of the child. *In re Welfare of Children of M.A.H.*, 839 N.W.2d 730, 744 (Minn. App. 2013). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *J.R.B.*, 805 N.W.2d at

5

905 (quotation omitted). We review the district court's best-interests determination for an abuse of discretion. *Id.* "[D]etermination of a child's best interests is generally not susceptible to an appellate court's global review of a record, and . . . an appellate court's combing through the record to determine best interests is inappropriate because it involves credibility determinations." *In re Welfare of Child of D.L.D.*, 771 N.W.2d 538, 546 (Minn. App. 2009) (quotations omitted).

Appellant argues that termination was not in J.J.I.'s best interests because termination "offer[ed] the child no further protection," due to the fact that appellant was a non-custodial parent of J.J.I. and was unlikely to be awarded custody or parenting time because of his criminal history. He asserts that any protection J.J.I. gained from the termination decision was outweighed by its financial consequences because termination rendered J.J.I. ineligible to inherit from appellant, recover in a wrongful death suit, or receive government benefits through him.

In support of his argument, appellant relies on two cases in which non-custodial parents sought *voluntary* termination of their parental rights: *In re Welfare of Alle*, 304 Minn. 254, 230 N.W.2d 574 (1975), and *In re Welfare of J.D.N.*, 504 N.W.2d 54 (Minn. App. 1993). Each of these cases held that there was no "good cause" allowing for the voluntary termination of parental rights when a non-custodial parent appeared to seek termination in order to avoid financial responsibility for the child. *See Alle*, 304 Minn. at 257–58, 230 N.W.2d at 576–77; *J.D.N.*, 504 N.W.2d at 57–58. These cases noted that allowing a parent to voluntarily terminate his or her parental rights based in part on financial concerns failed to serve the twin aims of the statute: "to enable the judicial

6

system to legally remove a child from a destructive or unhealthy home environment" without the parent's consent, and "to facilitate adoption procedures" by allowing for voluntary termination. *Alle*, 304 Minn. at 257, 230 N.W.2d at 576; *J.D.N.*, 504 N.W.2d at 57.

These cases are readily distinguishable. First, *Alle* and *J.D.N.* dealt with parents seeking to voluntarily terminate their own rights—a much different situation than the involuntary termination before this court. "[C]ircumstances that justify involuntary termination do not necessarily justify voluntary termination." *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 712 (Minn. App. 2004) (citing *J.D.N.*, 504 N.W.2d at 56).

Second, appellant's argument is predicated on the assumption that he will never parent or even contact J.J.I. due to his past conviction and the conditions of his probation. Appellant's claim that he will not pursue a relationship with J.J.I., combined with their lack of a past parent-child relationship, only serves to support the district court's decision that termination was in the child's best interests. *See In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992) (noting that lack of parent-child relationship supported district court's best-interests determination). And, if appellant's parental rights were not terminated, he would retain the right to seek custody or parenting time under Minn. Stat. § 257.541, subd. 2(a) (2014), and could also withhold his consent to an adoption under Minn. Stat. § 259.24, subd. 1(a) (2014). Although appellant's successful exercise of these rights is unlikely given his history of sexually abusing his own children and demonstrated lack of relationship with J.J.I., the possibility that appellant could come into contact with J.J.I. if he retained his parental rights weighs in favor of termination.

7

The record also shows that appellant will remain in J.J.I.'s life. He has twice had contact with J.J.I. in violation of the terms of his probation, and it appears that appellant will remain in a relationship with A.S.R. In his reply brief, appellant asserts that "[a]ny danger to the child" from his past contact or possible future contact with J.J.I. should be attributed to A.S.R.'s willingness to allow those contacts to occur. This argument is completely without merit. Appellant is on probation for having sexually abused his other children, and he is responsible for ensuring that he complies with his probation by avoiding contact with J.J.I. In sum, the district court's finding that it is in J.J.I's best interests to prevent the child from having further contact with appellant is supported by the record and is wholly consistent with the purpose of the juvenile protection statutes in removing children from "destructive or unhealthy home environment[s]." *See Alle*, 304 Minn. at 257, 230 N.W.2d at 576.

Appellant further argues that the district court erroneously disregarded J.J.I's financial wellbeing in its best-interests determination. This argument is not supported by the record or the cases he cites. In *Alle* and *J.D.N.*, non-custodial parents sought voluntary termination of their parental rights to relieve themselves of their financial responsibility for a child. *See id.* at 257–58, 230 N.W.2d at 576–77 (concluding that it was not in children's best interests to allow parent to terminate his financial support of children); *J.D.N.*, 504 N.W.2d at 55 (noting that parent never made any voluntary child support payments and owed significant child support arrearages).

Unlike the parents in these cases, appellant failed to give any testimony indicating what financial benefits he was or would be providing to J.J.I. In fact, the issue of his

8

financial support did not arise until closing arguments, when his counsel asserted for the first time that termination would prevent appellant from owing child support and would render J.J.I. ineligible for federal disability benefits through appellant. For purposes of this appeal, we will assume the question was properly before the district court despite the fact that raising the question for the first time in closing arguments precluded respondent from introducing any evidence on the point. Because the argument was raised for the first time in appellant's closing argument, however, he did not enter any evidence on this issue, and thus the argument is, on this record, unsupported. Moreover, even if appellant had testified about benefits to which J.J.I. would also be entitled, the juvenile protection statutes specify that a termination order "shall not disentitle a child to any benefit due the child from any third person, agency, state, or the United States." Minn. Stat. § 260C.317, subd. 2 (2014). Given the utter lack of record evidence as to any lack of financial benefits J.J.I. would have as a result of the termination of appellant's parental rights, the evidence supports the district court's rejection of appellant's financial claims, including its findings that appellant "did not introduce any evidence of a disability or any benefits that the child might receive" and that J.J.I. would remain eligible for benefits by statute. Accordingly, we conclude that the district court's best-interests determination is not erroneous on this record.

Next, appellant argues that termination of his parental rights is inappropriate because respondent should have sought to transfer custody to the child's maternal grandparents instead of seeking to terminate his parental rights. We disagree. By statute, respondent is required to petition to terminate the parental rights of a parent if that parent

9

is convicted of an offense requiring registration as a predatory sex offender. Minn. Stat. § 260C.503, subd. 2(a)(6) (2014). The county is relieved of this duty only if it and the responsible social services agency "determine and file" a petition for a transfer of custody of the child to a relative or a petition for the child to be designated in need of protection or services (CHIPS). *Id.*, subd. 2(d) (2014). To invoke one of these alternatives to termination, the county must either include in its petition to transfer custody "a determination that adoption is not in the child's best interests and that transfer of permanent legal and physical custody is in the child's best interests," or include in its CHIPS petition "a compelling reason why filing a termination of parental rights petition would not be in the best interests of the child." *Id.* We review the construction and application of statutes de novo. *In re Welfare of Child of R.S.*, 805 N.W.2d 44, 49 (Minn. 2011).

To support his argument, appellant points to the social worker's trial testimony that a transfer of custody would be in J.J.I's best interests, and asserts that there was no need for respondent to terminate his parental rights when adoption is not being contemplated for the child and appellant's history as a sex offender prevents him from having contact with the child. Contrary to appellant's assertions, however, the social worker did not testify that a transfer of custody would be in the best interests of J.J.I. regarding *appellant's* parental rights to the child; rather, the social worker was testifying about a parenting assessment and the recommendation based thereon regarding A.S.R.'s parental rights. In fact, in district court, respondent objected to this line of testimony *because* it dealt with A.S.R., whose parental rights were *not* at issue in the trial

10

addressing whether to terminate appellant's parental rights, and the district court sustained the objection on *precisely* that ground.

Moreover, here, in its petition to terminate appellant's parental rights, respondent stated that it had investigated the matter and "could not find any compelling reasons" why filing a termination petition would not be in the best interests of J.J.I. Absent a reason or basis for the county to seek a non-termination resolution of this case, respondent was required under Minn. Stat. § 260C.503, subd. 2(a)(6) to petition to terminate appellant's parental rights. Absent a reason or basis for the county to seek a non-termination resolution of this case, respondent was required under Minn. Stat. § 260C.503, subd. 2(a)(6) to petition to terminate appellant's parental rights. Moreover, any possible error in respondent's decision on this point was obviated when the district court affirmatively found that termination of appellant's parental rights was, in fact, in J.J.I.'s best interests. *Cf. In re Welfare of Children of D.F.*, 752 N.W.2d 88, 98 (Minn. App. 2008) (applying harmless error analysis in the context of a termination of parental rights).

On this record, we conclude that the district court did not abuse its discretion by terminating appellant's parental rights to J.J.I.

**Affirmed.**

11