In the Matter of the WELFARE OF K.T., also known as D.L.C.

No. 82–195.

Supreme Court of Minnesota.

Dec. 10, 1982.

William R. Kennedy, Hennepin County Public Defender, and Franklin J. Knoll and David Knutson, Asst. Public Defenders, Minneapolis, for juvenile's mother.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Robert Gyurci and Janeen Rosas, Asst. County Attys., Minneapolis, for Hennepin County Bureau of Social Services.

Stewart R. Perry, Wayzata, for adoptive parents.

SCOTT, Justice.

This is an appeal from the order of the Hennepin County District Court-Juvenile Division denying the motion of appellant for an order vacating an earlier order terminating appellant's parental rights to her child, K.T.

On May 7, 1980, the state's petition for voluntary termination was heard before a referee of the district court-juvenile division. The referee denied the state's petition for termination of parental rights without prejudice. On June 10, 1980, a hearing was held before the district court-juvenile division which granted the petition to terminate. In the spring of 1981, K.T. was legally adopted by respondents. More than one year after appellant's parental rights had been terminated the Hennepin County Public Defender, representing appellant, filed a motion to vacate the termination. The adoptive parents were represented by counsel at the hearing on the motion. The motion was denied.

K.T. was born on April 21, 1979, to appellant, an unmarried 16-year-old. The father of the child has not been identified. The appellant never took K.T. home. He was placed in foster care by the hospital four days after birth. The appellant did not visit K.T. in the ensuing 13 months prior to the initial termination hearing.

Child Protection Social Worker Cliff Robinson met with the appellant regarding her plans for K.T. On January 22, 1980, the appellant signed an affidavit consenting to K.T.'s commitment to the guardianship and legal custody of the Commissioner of Public Welfare and consenting to his adoption. On April 3, 1980, the state, through the Hennepin County Bureau of Social Services, filed a petition seeking termination of appellant's parental rights to her son.

On May 7, 1980, the state's petition for termination was heard before a referee of the Hennepin County District Court-Juvenile Division. The referee informed appellant that the purpose and nature of the hearing was permanent and could not be changed. The referee explained that the hearing could result in appellant's "forever losing any rights you may have as the mother of [K.T.]." Appellant was then informed that because of the serious nature of the hearing she had the right to have an attorney with her in court. Appellant chose to proceed without an attorney.

The referee explained to appellant the necessity of appointing a guardian ad litem to assist her in the courtroom and to affirm her decisions. The referee asked appellant if she ordinarily consulted with her mother about serious and long-lasting decisions and if she was someone whose judgment appellant trusted. Appellant answered both questions affirmatively; said that she felt her mother was an appropriate person to act as her guardian ad litem; and her mother agreed to represent her.

When questioned by the referee, appellant indicated that she could not handle the responsibilities of two children. In addition to K.T., the appellant has a daughter who was two years old at the time of the hearing. The referee asked appellant if she understood that if her rights to K.T. were terminated she would not have the right to come back at some time in the future and say that she could then care for two children. The referee told appellant that adoption by another family would follow the termination and asked if she wanted that for her son. Appellant said yes, that was what she wanted for him. Her mother stated that she thought the appellant understood the permanence of her decision.

Finally, the referee asked appellant if she understood that this procedure would be so final that if K.T. were to die tomorrow, the appellant would not be told about it. Appellant said that she did not understand that. The referee then denied the petition for voluntary termination of parental rights and instructed that appellant be given a "tremendous amount of information * * * about the finality of what she is doing before the matter is completed and made irrevocable." The referee stated that the petition could be reinstituted at some point

in the future after full explanation and time to think about the proposed termination had been given the appellant.

Cliff Robinson drove appellant and her mother home from the hearing and further explained the nature of termination proceedings and adoption. A second hearing was scheduled, this one before a judge of the district court-juvenile division, on June 10, 1980. The state presented the same affidavit of consent the appellant had signed on January 22, 1980, which the state had submitted to the referee at the first hearing. Appellant's mother was again appointed guardian ad litem. Appellant stated that she wished to terminate her parental rights to K.T. because she could not take care of two children financially. She acknowledged that she had discussed the permanent nature of the proceeding with Mr. Robinson; that she understood that K.T. might be placed for adoption; and that she would have no further contact with him. The court granted the petition and ordered that appellant's parental rights to K.T. be terminated.

The appellant had no contact with K.T. following the termination of her parental rights. In late May or early June 1981, appellant's maternal grandmother became aware through television and newspaper reports that K.T. had been adopted by respondents. She contacted an attorney, and on November 9, 1981, appellant filed a motion for an order vacating the order of June 20, 1980, which had terminated her parental rights to the child. The motion was heard before the Hennepin County District Court-Juvenile Division on January 12, 1982. On January 13, 1982, the court issued findings of fact, conclusions of law, and an order denying appellant's motion. This is an appeal from that order.

The following issues are presented:

(1) Whether the trial court erred in finding that the juvenile court had sufficient grounds to terminate the parental rights as of the June 10, 1980, hearing.

(2) Whether the termination order under Minn.Stat. § 260.221(a) (1978) should be set aside as having been obtained by fraud, duress, or undue influence.

■ 1. Minn.Stat. § 260.221(a) (1978) provides that:

The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

(a) With the written consent of parents who for good cause desire to terminate their parental rights * * *

A showing of (a) voluntary consent in writing and (b) good cause is required to establish grounds for termination under this section. *In re J.M.S.,* 268 N.W.2d 424 (Minn. 1978). Appellant contends that her consent was not an informed consent and, therefore, not valid under the statute. Appellant claims that she did not understand the permanent nature of her decision to voluntarily terminate her parental rights.

If there had been some confusion in her mind at the time of the referee's hearing, testimony at the two subsequent hearings was sufficient to establish that she understood the permanent nature of her act. The referee's question as to whether appellant understood that if K.T. were to die tomorrow she would not be informed should itself have made appellant aware of the permanent nature of the proceedings. Appellant then had five weeks between the first and second hearings in which to consider her decision. During that period Cliff Robinson further explained the ramifications of a decision to terminate one's parental rights. At the second hearing, appellant said that she understood that she would have no further contact with K.T. and that he might be placed for adoption. Appellant realized that she would never see K.T. again if her parental rights were terminated.

■ Appellant also contends that the document representing her written consent was invalid. She contends that the document does not meet the statutory formalities required by Minn.Stat. § 259.24, subd. 5 (1980). Appellant did not raise this issue below at either the termination hearing or the evidentiary hearing. It is well settled that a party may not raise for the first time

on appeal a matter not presented to the court below.

Even if the objection were timely, it is without substance because Minn.Stat. § 260.221(a), which governs voluntary proceedings for the termination of parental rights, requires only "written consent" to the termination, without prescribing any particular formalities. Section 259.24, which applies to parental consent to adoption, has no application to proceedings under § 260.221. *In re J.M.S., supra.*

■ The document here in question, entitled "Affidavit of Consent" and signed by appellant, states:

I, [J.T.], do hereby give my consent for my child, [K.T.], born on 4/21/79 in Mork, Minn., to be committed to the guardianship and legal custody of The Commissioner of Public Welfare. I further give my consent to the adoption of my child and hereby waive notice in the adoption proceedings. This consent is executed of my own free will and accord and is not procured through any duress or under any influence or fraud.

The above writing is sufficient to satisfy the "written consent" requirement of § 260.221(a).

Section 260.221(a) also requires that the parent have "good cause" for terminating her parental rights. The juvenile court found that (1) K.T. had resided in a foster home since birth, (2) appellant had never visited him, and (3) appellant wished to terminate her rights to K.T. because she was already caring for one child and could not undertake the care of another child at the same time. The court concluded that "Mother, [J.T.], *for good cause* consents to terminate her parental rights to [K.T.]" (Emphasis added.)

■ Where a court's findings of fact are supported by substantial evidence and are not clearly erroneous, they will not be reversed. Minn.R.Civ.P. 52.01. In *In re J.M.S., supra,* the court held that a mother's determination that it was in the best interest of her child to have two adoptive parents provided "good cause" under § 260.-221(a) to terminate her parental rights. Appellant's lack of contact with her child and belief that she could not care for two children financially are also sufficient to provide "good cause" under § 260.221(a).

Appellant cites *In re Solomon,* 291 N.W.2d 364 (Minn.1980), for the proposition that infrequent visitation by itself is not sufficient grounds for termination. *In re Solomon* is a case involving *involuntary* termination of parental rights under § 260.-221(b) and, therefore, does not apply to the case at bar.

Appellant also relies on *In re Alle,* 304 Minn. 254, 230 N.W.2d 574 (1975), for the proposition that the desire to be relieved of the financial burden of a child is not "good cause" under § 260.221(a). *In re Alle* is distinguishable in that the father who sought termination of his parental rights in *Alle* did so solely to avoid the financial burden of supporting his adoptive children. He was separated from his wife and through the termination intended to leave her the entire burden of support. The court stated that § 260.221(a) was generally intended to "facilitate adoption procedures by providing a means by which existing parental rights may be voluntarily terminated." In *Alle* no adoption procedures were contemplated, while in the present case adoption was expected to follow the termination.

■ Appellant further contends that the interests of justice and fairness require that counsel should have been appointed for her despite her clear waiver of such right at the hearings before the referee and the judge. The record clearly reflects that at the hearings before both referee and judge appellant was advised of her right to *free* legal counsel. She rejected the offers. There is no evidence that she was not competent to make a knowledgeable waiver of her right to counsel and, therefore, the failure of the juvenile court to appoint counsel for appellant was not error.

■ 2. In *In re J.M.S., supra,* this court held that a termination order under Minn.Stat. § 260.221(a) is a final adjudica-

tion of parental rights which can only be set aside upon a showing of fraud, duress, or undue influence. The reasoning behind the court's decision to limit the circumstances whereby a termination order based upon the voluntary, informed consent of a parent may be set aside is clear. At some point permanence for the child and adoptive parents becomes more important than the natural parent's right to reconsider her decision. It is simply not in the best interests of a child for the parent-child relationship to be continually altered. Only the most serious circumstances justify tampering with this most fundamental relationship. This court has adopted very stringent standards which must be met before parental rights will be terminated. These rights will be taken away only for grave and weighty reasons. *In re H.G.B.,* 306 N.W.2d 821 (Minn.1981).

It is just as important, however, that once a parent has voluntarily consented to the termination of her parental rights such a decision not be abrogated except for equally grave and weighty reasons. In considering the best interests of a child, stability is a factor which must be given high priority. A parent who has consented to a termination order cannot have that order set aside simply because she has changed her mind or her circumstances have otherwise changed. Some serious and compelling reason must exist in order to once again uproot the child and dramatically change his living environment. This court, in *In re J.M.S., supra,* held that only where fraud, duress or undue influence are proven will a termination order based on parental consent be rescinded. No such showing has been made in the present case.

Appellant submits that a fraud was perpetrated upon the juvenile court (1) through the failure of counsel for the state to inform the district court-juvenile division at the second hearing that the termination petition had been denied by the referee at an earlier hearing, and (2) by the failure of the Department of Community Services to disclose to said court the information known to it relative to the fitness of the

guardian to serve and her possible interests adverse to those of the minor mother and her son.

Minn.Stat. § 260.031, subd. 3 (1980), places the burden of informing the court of prior proceedings on the officers of the juvenile court when it states that upon conclusion of a hearing before a referee, "the referee shall transmit to the judge all papers relating to the case, together with his findings and recommendations in writing." This was done. The district court-juvenile division judge had the file available before him prior to and at the second termination hearing. Appellant had five weeks to reconsider her decision to voluntarily terminate her parental rights to her son following the referee's denial of the petition. Appellant clearly reiterated her intention to relinquish her parental rights at the hearing before the terminating court. The transcript discloses no evidence that appellant was in any way prejudiced.

Neither did the failure of the Department of Community Services to provide the court with information known to it relative to the fitness of the guardian to serve for the minor mother and her son constitute a fraud upon the court. Mr. Robinson testified at the evidentiary hearing before the district court that he knew the guardian had a drinking problem and that he was aware of allegations that she had physically abused J.T. in the past. Mr. Robinson also testified that he felt that the guardian was competent to act for appellant. The referee appointed the guardian after stating that ordinarily a guardian would be the minor's mother or father, and inquired extensively of both appellant and her mother before making the appointment. Appellant stated that she trusted her mother, customarily consulted her about important decisions and had done so regarding the decision to terminate her parental rights. There is no reliable evidence that appellant's mother was unfit to be appointed guardian ad litem. Appellant had the opportunity to object to the appointment at the referee's hearing and at the district court-juvenile division hearing when her

mother was reappointed as guardian ad litem. She made no such objection. Finally, the court from which this appeal is taken found that the mother was an "appropriate and adequate person to act as guardian ad litem."

The district court's denial of appellant's motion to vacate the order terminating appellant's parental rights to her son is affirmed. The evidence overwhelmingly supports the conclusion that appellant understood the nature of the proceedings before the district court-juvenile division when her parental rights were terminated.

Affirmed.