**In the Matter of the WELFARE OF the CHILDREN OF B.J.B. and N.N.P., Parents.**

No. A07–2124.

Court of Appeals of Minnesota.

April 22, 2008.

Pamela A. King, Baker Law Offices, Rochester, MN, for appellant B.J.B.

Paul J. Kiltinen, Dodge County Attorney, Janet L. Mahle Hinds, Assistant County Attorney, Mantorville, MN, for respondent Dodge County.

Considered and decided by WORKE, Presiding Judge; HUDSON, Judge; and HARTEN, Judge.*

## OPINION

WORKE, Judge.

In this appeal from the district court's order revoking a stay of termination of her

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

parental rights, appellant-mother argues that (1) the district court's use of a stayed termination order is not authorized and led to an involuntary waiver of her right to trial and to have the state prove its case, and (2) the record does not support revoking the stay. Because the district court did not err by using a stayed termination order, which did not deprive appellant of due process, and because a statutory basis for terminating appellant's parental rights was shown by clear and convincing evidence, we affirm.

## FACTS

Appellant B.J.B. has a history of chemical dependency and failures in multiple treatment programs. In May 2006, appellant's fifteen-month-old child, C.P., was adjudicated a child in need of protection or services; in May 2007, appellant's seventeen-month-old, C.B., was added to the petition and adjudicated in need of protection or services.

In July 2007, the district court issued an emergency protective order removing the children from appellant's custody after methamphetamine was found at appellant's residence and she admitted to cocaine use. Following a review hearing in August 2007, the district court found that appellant had consistently produced positive urinalyses (UAs), failed to attend scheduled out-patient treatment sessions, and failed to attend individual therapy. Appellant also missed several supervised visits with the children.

The court gave appellant another 15 days to show that she could abide by the terms of her case plan, which she was unable to do. Dodge County then petitioned for the termination of appellant's parental rights, based on appellant's diagnosed history of chemical dependency, her multiple failures in chemical-dependency treatment, and her continued failure to abstain from chemical use. Appellant entered inpatient chemical-dependency treatment. The children's father consented to termination of his parental rights.

On October 5, 2007, after appellant finished the treatment program, the parties signed a stipulation in which appellant admitted to the termination petition under Minn.Stat. § 260C.301, subd. 1(b)(5) (2006), which provides grounds for termination if, following the children's out-of-home placement, reasonable efforts have failed to correct the conditions leading to that placement. Appellant admitted that she was addicted to chemicals; that her addiction gravely and negatively impacted her ability to parent the children; that reasonable efforts to correct conditions leading to the children's placement had been made and those efforts were unsuccessful; and that due to her ongoing chemical dependency, she would be unable for the foreseeable future to care appropriately for the children's physical, mental, or emotional needs. The stipulation also provided that an order would be issued, staying the termination of appellant's parental rights for up to 90 days based on appellant's 100% compliance with certain conditions, including abstaining from the use of alcohol or controlled substances, refusing to associate with persons who used those substances, and complying with all requested UAs. The stipulation provided that, should appellant comply with all of the conditions, visitation with the children would possibly become unsupervised and gradually increase to include overnights, with dismissal of the petition without prejudice after 90 days and the children remaining under protective supervision or care. If it were alleged that appellant had violated the conditions, the court would hold a hearing and make a finding on the alleged violation. The stipulation stated that if appellant failed to comply with the provisions of the stipulation and order "in all respects," it would be determined to be in the best interests of the children to

terminate her parental rights so that the children could obtain a permanent home.

When the parties presented the stipulation to the court, appellant's attorney stated that appellant wished to admit, as stipulated, to the termination petition. Appellant testified that she was addicted to cocaine and other controlled substances, that she had failed chemical-dependency programs at least twice, and that she loved her children but was incapable of parenting when she was using chemicals. Appellant waived her right to a court trial, to subpoena and cross-examine witnesses, and to testify or not to testify. The court confirmed that the stipulation included random testing for the next 90 days, and appellant agreed to provide a UA immediately after the hearing. The court approved the stipulation.

Appellant produced a positive UA after the hearing, and a second UA also tested positive for cocaine. Appellant, as well as the person she was living with, declined to produce any additional UAs over the next few days. On October 12, the district court held another hearing on the allegation that appellant had violated the conditions of the stay. Appellant was present and admitted, through her attorney, that "she did relapse. She did use cocaine." The district court issued an order terminating appellant's parental rights, and this appeal followed.

## ISSUES

I.  Did the district court err by using a stayed termination order in a termination-of-parental-rights proceeding?

II.  Does clear and convincing evidence of a statutory basis for termination exist to support revocation of the stay?

## ANALYSIS

### I.

A district court may terminate parental rights if it is proved by clear and convincing evidence that a statutory ground for termination exists and that the termination is in the child's best interests. *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn.2001). The best interests of the child is the paramount consideration in a termination-of-parental rights proceeding. Minn.Stat. § 260C.301, subd. 7 (2006). Whether a parent's due-process rights have been violated in a termination proceeding is a question of law, which this court reviews de novo. *In re Child of P.T.*, 657 N.W.2d 577, 583 (Minn.App. 2003), *review denied* (Minn. Apr. 15, 2003).

The parent-child relationship is among the fundamental rights protected by substantive due process. *Soohoo v. Johnson*, 731 N.W.2d 815, 820 (Minn.2007); *P.T.*, 657 N.W.2d at 588. The applicable due-process standard for juvenile proceedings is fundamental fairness. *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L.Ed.2d 647 (1971). A court considering whether a party has been deprived of due process balances the private interest affected by official action, the risk of erroneous deprivation of that interest through the procedures used and the value of additional or substitute procedural safeguards, and the government's interest. *Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 415–16 (Minn.2007).

Appellant argues that the district court's use of a stayed termination order violated substantive and procedural due process because it induced her to waive her constitutional right to a hearing and to waive the requirement that grounds for termination be proved by clear and convincing evidence.

At the outset, the record does not show that appellant used the prescribed procedure under the Minnesota Rules of Juve-

nile Protection Procedure for challenging a settlement in a termination proceeding. That procedure requires that a party who objects to a settlement agreement in a termination proceeding must, within five days of service of notice of the proposed agreement, "adopt the existing pleadings ... or file pleadings in support of an alternative." Minn. R. Juv. Prot. P. 19.04. Additionally, although alleging coercion, appellant did not request relief from the district court order based on fraud, duress, or undue influence. *See* Minn. R. Juv. Prot. P. 46.02 (allowing district court to grant relief based on fraud or misrepresentation); *see also In re Welfare of N.M.C.*, 447 N.W.2d 14, 17 (Minn.App. 1989) (stating that a parent seeking to set aside an order terminating parental rights must "allege facts sufficient to show duress, undue influence, or fraud before a full evidentiary hearing will be held").

To support her argument that the use of a stayed termination order deprived her of due process, appellant notes that no express authority exists for such an order and cites *P.R.L.*, in which the Minnesota Supreme Court expressed disapproval of stayed termination orders. 622 N.W.2d at 544. The supreme court stated:

> [a] stayed termination order engenders in child and parent the hope of reunification based upon anticipated compliance with the conditions of the stay by a parent who has so steadfastly failed to comply with case plans that it has been found to be in the best interests of the child to have the parent's rights terminated. In that way it exacts real, human costs.... While the courts must exhibit caution in severing family bonds, they should not merely delay what is demonstrated to be inevitable.

*Id.* The supreme court also noted both that no specific statute or rule authorizes "[s]taying a permanency order" and that

"settlement tools in child protection matters cannot exist outside the statutory mandate that decisions are to serve a child's best interests." *Id.* at 543 and n. 6, 544.

But the supreme court, although expressing disapproval of a stayed-adjudication process, upheld the termination of parental rights in *P.R.L.*, concluding that the district court's findings showed grounds for termination by clear and convincing evidence. *Id.* at 545. Thus, the language cited by appellant from *P.R.L.* was dicta, and no caselaw or statute explicitly prohibits the use of such a stay.

We acknowledge the supreme court's warning that staying a termination order carries the potential for significant substantive and procedural legal problems, as well as a substantial likelihood for the "real, human costs" mentioned in *P.R.L.* But we cannot conclude that in every case the district court's use of this procedure so impacts either a parent's rights or a child's best interests that it invariably constitutes reversible error. Specifically, the facts and procedure in this case do not show that appellant was deprived of due process by the district court's use of a stay and the later revocation of that stay.

The record shows that appellant was represented by counsel throughout the proceedings. At the hearing when the stipulation was received, appellant's attorney stated that appellant was willing to admit to grounds for terminating her parental rights under Minn.Stat. § 260C.301, subd. 1(b)(5). Appellant's attorney then questioned appellant concerning her rights to a court trial, to subpoena witnesses and cross-examine opposing witnesses, and to testify or not to testify. Appellant testified that she wished to waive all of these rights. Appellant also acknowledged that she was agreeing to termination because of her addiction to cocaine and other illegal

substances and because she had attended multiple treatment programs and failed those programs at least twice. Appellant also acknowledged that when she was not using controlled substances, she was a good parent and loved her children, but that when she was using illegal substances she was not a good parent and was incapable of parenting at those times. Thus, before the court approved the stipulation, appellant, with the advice of her attorney, agreed to an admission to a statutory ground for terminating her parental rights and made complete, on-the-record waivers of her constitutional rights. At the hearing revoking the stay, appellant's attorney also confirmed that appellant had voluntarily entered into the stipulation and waived her right to a trial.

■ Appellant also maintains that the use of a stayed termination order is procedurally defective because no designated standards exist for determining a violation of the conditions of the stay. But the parties stated on the record their agreement that a hearing would be held if a violation were alleged, with the district court making findings as to whether the conditions of the stay had been violated. Under these circumstances, the lack of specific procedural standards does not violate procedural due process because the record shows not only that appellant voluntarily waived the typically applicable procedures, but also that the parties agreed on a process for an alleged violation and understood the consequences for a violation of the stay.

■ Appellant further argues that the use of a stayed termination order is inconsistent with the best interests of the children. Finality is one factor to be considered in determining a child's best interests. *N.M.C.*, 447 N.W.2d at 17. But the record shows that at the time of the stipulation, appellant had just successfully finished a 21–day drug-treatment program. Because the petition was initially filed as a result of appellant's consistent history of drug use and treatment failures, we cannot say, in light of what was then an apparent success by appellant, that the court acted unreasonably by giving appellant a final chance to address her chemical dependency and maintain sobriety as a condition of resuming reunification efforts.

Therefore, we conclude that the district court's use of a stayed termination order in a termination-of-parental-rights proceeding does not, by itself, violate due process and that in this case, appellant's due-process rights were not impermissibly infringed by the court-approved stipulation and the later revocation of the stay.

## II.

■ Appellant argues that even if the district court appropriately stayed the termination, there was insufficient evidence to support the revocation of the stay and to terminate her parental rights. To revoke a stay of termination of parental rights, there must be sufficient evidentiary basis to show the existence of conditions satisfying a statutory ground for termination at the time of revocation. *P.R.L.*, 622 N.W.2d at 544–45.

Appellant maintains that there was no evidence admitted at the revocation hearing, and that appellant's admission through her attorney that she relapsed by using cocaine was insufficient to show the existence of a statutory ground for termination. But appellant's attorney told the court that appellant waived an evidentiary hearing on the issue of grounds for revocation. And appellant has cited no authority for the proposition that she was required personally to admit her violation of the conditions of the stay.

Further, a finding that "following the child's placement out of the home, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement" is a sufficient ground for termination under Minn. Stat. § 260C.301, subd. 1(b)(5). *P.R.L.*, 622 N.W.2d at 544. A presumption arises that reasonable efforts have failed on a showing that:

> (A) the parent has been diagnosed as chemically dependent by a professional certified to make the diagnosis;
>
> (B) the parent has been required by a case plan to participate in a chemical dependency program;
>
> (C) the treatment programs offered to the parent were culturally, linguistically, and clinically appropriate;
>
> (D) the parent has [ ] failed two or more times to successfully complete a treatment program . . .; and
>
> (E) the parent continues to abuse chemicals.

Minn.Stat. § 260C.301, subd. 1(b)(5)(iv).

Although the district court's findings do not specifically refer to each of these bases, the findings are sufficient to show by clear and convincing evidence that a basis existed for terminating appellant's parental rights. The district court took notice of the court orders in the child-protection proceedings concerning both children. *See* Minn. R. Juv. Prot. P. 3.02, subd. 3 (stating that in juvenile-protection proceedings, a district court may take judicial notice as permitted under the Rules of Evidence, as well as findings of fact and court orders in juvenile-protection court files and any other proceedings in any court file involving the child or the child's parents). The uncontested record establishes that appellant had received diagnoses of a history of cannabis, cocaine, opiate, hallucinogen and methamphetamine abuse; that she was required to participate in chemical-depen-

dency treatment plans by the terms of her case plan; and that she left at least three of those programs against staff advice. Appellant does not dispute that she had positive UAs immediately following the hearing at which the stipulation was approved, and she admitted through her attorney that she had "relapsed" and used cocaine. Therefore, a presumption was created that reasonable efforts have failed to correct the conditions leading to the children's out-of-home placement. Appellant failed to rebut that presumption, and the record shows by clear and convincing evidence that a statutory condition for termination existed.

## DECISION

The district court's use of a stayed termination order did not deprive appellant of due process, and a statutory basis for termination was shown by clear and convincing evidence at the time the stay was revoked.

**Affirmed.**

HARTEN, Judge (concurring specially).

I agree with the result here—termination of appellant's parental rights (TPR) is in the children's best interests. But, unfortunately, the judicial process disregarded the supreme court's admonition in *P.R.L.* that staying the adjudication of TPR petitions implicates a parent's right to due process. As the supreme court noted, no statute or rule provides authority for a stay in TPR proceedings. *P.R.L.*, 622 N.W.2d at 543. And such a stay may hold out an unlikely hope for reunification, thus pressuring a parent to forgo his or her constitutionally protected right to a trial on the merits of the petition. "It is particularly troubling to stay entry of a permanency order . . . where the problem that led to termination was one of such

long standing and the prospects of success during a stay so dim as to make the court, through its agreement to the stay, a party to fruitless delay." *Id.* at 544. This language applies in the instant case, where the stay was conditioned on appellant's ability to maintain sobriety by overcoming a longstanding history of chemical abuse and treatment failures. Unfortunately, such stays are not expressly prohibited. Even so, the lack of established procedural standards governing stayed TPR disposi- tions creates problematic due process concerns for court administration of (including vacation of) the stay. Here, as in almost all such TPR stays, nothing was accomplished but an unwarranted continuation of the children's hardship and uncertainty.