*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0802**

In the Matter of the Welfare of the Children of:
C. M. M. and A. J. M., Parents.

**Filed December 26, 2023
Affirmed
Cochran, Judge**

Steele County District Court
File No. 74-JV-22-2070

Mallory K. Stoll, Ashley K. Morelli, Blahnik, Prchal & Stoll, PLLC, Prior Lake, Minnesota
(for appellant C.M.M.)

Julia A. Forbes, Steele County Attorney, Tazio N. Lombardo, Assistant County Attorney,
Owatonna, Minnesota (for respondent Minnesota Prairie County Alliance)

Julie A. Nelson, Owatonna, Minnesota (guardian ad litem)

Considered and decided by Slieter, Presiding Judge; Cochran, Judge; and
Larson, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

Appellant-mother challenges the district court's decision to terminate her parental
rights to two minor children. Appellant argues that the district court (1) violated her right
to due process when it proceeded by default after she failed to appear for trial, (2) erred in
its findings regarding whether the responsible social-services agency made reasonable

efforts toward reunification, and (3) abused its discretion when it found that clear and convincing evidence supports at least one statutory basis for termination. We affirm.

## FACTS

Appellant-mother C.M.M. (mother) and father A.J.M. (father) are the parents of two minor children: Child B, born in October 2013, and Child S, born in January 2021. Child B and Child S are the subject of the petition to terminate parental rights at issue in this case. Mother also has an older child, Child L, born in January 2007. Child L, who has a different father than the two younger children, was the subject of a separate permanency petition. All three children lived with mother except as specified below.

Respondent Minnesota Prairie County Alliance (MNPrairie), a human-services agency for Dodge, Steele, and Waseca counties, became involved with mother and father following reports stemming from father's domestic abuse of mother and mother's chemical dependency.[1] The first report of domestic abuse followed an incident in summer 2017 during which father "essentially held [mother] hostage." MNPrairie became aware of the incident because Child L escaped the home while the incident was occurring, ran to her daycare provider, and called 9-1-1. Shortly thereafter, MNPrairie received multiple reports that Child L and Child B had not been in school or daycare for several days. They also received reports that mother often left the children home alone while she went out to use drugs or to drink. After receiving the reports, a social worker followed up with a visit to

---

[1] The facts in this section are drawn from the record, including the exhibits and testimony received at trial. All incidents occurring before January 2021, when Child S was born, involve only Child L and Child B.

2

mother's apartment in November 2017 at around 11:30 a.m. on a school day. It took mother several minutes to answer the door. The social worker observed that neither child was dressed, and Child B was wearing a full, soiled diaper. Mother spoke with the social worker and admitted that she had been using cocaine in the home. Mother also stated that she recently spent as much as $40-100 per day on cocaine. And mother admitted that her drug use was affecting her parenting by making her less motivated to care for the children and preventing her from paying the bills.

From 2018 through 2020, MNPrairie received several more reports alleging that mother was neglecting and endangering her children as a result of her drug use. In November 2019, the police found Child B, who was six years old at the time, walking down the road barefoot in pajamas one-half mile from where mother and the children were staying. During an investigation into the incident, one officer recalled a similar event occurring in May 2018, when he found the same child walking along a county road in a diaper and a t-shirt. A few months later, in April 2020, mother told a friend that she had not slept for days due to her heavy cocaine use. Mother could not remember much of what happened during that period. According to a MNPrairie social worker, mother entered an inpatient drug-treatment program after that "relapse" but did not complete the program.

On June 23, 2020, MNPrairie filed a motion for immediate custody and a Child in Need of Protection or Services (CHIPS) petition for Child B and Child L, citing concerns about the children's health, safety, and welfare in light of the parents' chemical dependency, mental-health issues, and violent relationship. Following an Emergency Protective Care hearing, the district court determined that the children were in need of

3

protective services and granted temporary custody of the children to MNPrairie for placement in foster care. More than one year later, in August 2021, the district court dismissed the CHIPS petition and returned Child B and Child L to mother's custody. Mother's youngest child, Child S, was born while the two older children were in foster care and was living with mother when the two older children rejoined the household.

In December of 2021, four months after the first CHIPS petition was dismissed, MNPrairie received a report of educational neglect. The report alleged that Child B, who has special learning needs, had 20 unexcused absences from school. The report also alleged that the absences were affecting his ability to learn and retain skills. The child was eight years old at the time. According to the report, mother had not returned any calls from the school secretary regarding the child's attendance or from a special education teacher. When a social worker followed up with a visit to mother's apartment at around 10:00 a.m. on a school day, the social worker had to knock for 15-20 minutes before one of the children opened the door. Mother and the three children had been asleep. Mother admitted that she was struggling with her mental health and promised to take steps to address the issue.

A few days later, MNPrairie received another report that the same child, Child B, was not in school. When a social worker called mother's phone to follow up, the child answered. While the social worker was speaking with the child, she could hear Child S, who was 11 months old at the time, in the background. The child eventually gave the phone to mother, who sounded as if she had just woken up. A similar incident occurred the following week, when a social worker visited mother's apartment in the afternoon and

discovered that Child B and Child L were not in school. Mother was disheveled and admitted that her mental health was preventing her from bringing the children to school. Mother also admitted to relapsing on cocaine. She denied using at home, but the oldest child, Child L, told the social worker that she found cocaine in mother's bedroom after she suspected that mother had relapsed.

On December 22, 2021, MNPrairie filed a new CHIPS petition and a motion for immediate custody of the three children, based on concerns about mother's inability to care for the children due to her chemical dependency and mental-health issues. The district court granted the motion, determined that the children were in need of protective services, and ordered them to be temporarily placed in the custody of MNPrairie while they awaited placement in foster care. Shortly thereafter, MNPrairie placed the children in foster care. While the children were in foster care, MNPrairie worked with mother to address the concerns that led to the out-of-home placement of the children.

Approximately one year later, on December 28, 2022, MNPrairie filed a petition to terminate the parental rights of mother and father. After several unsuccessful attempts to serve mother with the summons and petition, MNPrairie filed a motion for service by publication. The district court granted the motion, and the summons and notice of the admit/deny hearing were published in a local paper on three separate dates.

By an order dated January 5, 2023, the district court relieved MNPrairie of its duty to make any further efforts to reunify the family in the CHIPS case after finding that continued reasonable efforts would be futile. The district court made the futility finding at the request of MNPrairie after it reported that mother had been discharged from chemical

5

health programming, was using cocaine again, was not engaging in services offered by MNPrairie, and "her visits had been detrimental to the children."

The district court held an admit/deny hearing in the termination-of-parental-rights (TPR) case on March 22, 2023, and a pretrial hearing on April 26, 2023. Mother and father appeared at both hearings with their respective counsel. At the admit/deny hearing, mother and father entered denials to the petition.

The district court scheduled a TPR trial for May 2, 2023. Mother was aware of the trial date and knew that failure to appear in person could result in a default order terminating her parental rights.

On May 2, 2023, mother and father did not appear for trial, but both of their attorneys were present. MNPrairie requested that the case proceed by default. Father's attorney did not object to the request, but mother's attorney did. Mother's attorney stated that he had made several attempts to contact mother by phone and email since the pretrial hearing approximately two weeks earlier but had not been able to reach her. The attorney then stated that given his lack of contact with mother, he was not prepared to go to trial and requested a continuance.

The district court denied the request for a continuance. The district court noted that both mother and father were well aware of the trial date. The district court stated that the history of the case and the underlying CHIPS matters supported proceeding by default, particularly given how long the children had been in out-of-home placement.

During the default hearing, MNPrairie called two MNPrairie social workers to testify about their involvement with the family. The children's guardian ad litem (GAL)

also testified.  The district court also received multiple documents into evidence, including several documents from related district court files, the futility order, and hundreds of pages of case notes from various MNPrairie professionals who had worked with the family over the years.

With respect to mother, the social workers and GAL testified that mother was incapable of caring for the children because she was either unable or unwilling to remain sober, unable to manage her mental health, and had a violent relationship with father.  The witnesses testified that mother had been offered many services, including chemical-dependency and mental-health treatment, but that none had resolved her underlying issues.  The witnesses specifically noted mother's history of entering drug-treatment programs and leaving by choice or because of behavioral issues.  One social worker also testified that mother had become increasingly absent in recent months, attending less than half of her scheduled visits with the children and almost none of their medical appointments.  The witnesses agreed that mother's parental rights should be terminated.

Following this testimony, the district court granted MNPrairie's petition to terminate the parental rights of mother and father.  In its final order, the district court found that the parties had received adequate notice of the scheduled trial and that proceeding by default was proper under the Minnesota Rules of Juvenile Protection Procedure.  The district court also found that MNPrairie had made reasonable efforts to reunify the family in the CHIPS case and that the agency was not required to make additional reasonable efforts in this case because the provision of such efforts was futile.  The district court then

concluded that MNPrairie had proven by clear and convincing evidence that four statutory grounds supported termination of parental rights and that termination would be in the best interests of the children. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (5), (8) (2022).

Mother appeals.

## DECISION

Parental rights may be terminated only "for grave and weighty reasons." *In re Welfare of Child. of B.M.*, 845 N.W.2d 558, 563 (Minn. App. 2014) (quotation omitted). A district court may involuntarily terminate parental rights when (1) at least one statutory ground for termination is supported by clear and convincing evidence, (2) the responsible social-services agency made reasonable efforts to reunify the parent and children or such efforts were not statutorily required, and (3) termination is in the children's best interests. Minn. Stat. §§ 260C.301, subds. 1(b), 7, 8, .317, subd. 1 (2022); *see also In re Welfare of Child. of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008).

On appeal from a decision to terminate parental rights, we review the district court's factual findings for clear error and "its determination of whether a particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion." *In re Welfare of Child. of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *rev. denied* (Minn. Jan. 17, 2012). "We give considerable deference to the district court's decision to terminate parental rights." *S.E.P.*, 744 N.W.2d at 385. "But we closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing." *Id.*

Mother challenges the termination of her parental rights to the children on several grounds. First, mother argues that the district court violated her right to due process by

proceeding by default after mother failed to appear for the TPR trial. Second, mother

contends that the district court erred in its determination regarding the reasonableness of

reunification efforts by MNPrairie. Finally, mother argues that the district court abused its

discretion by concluding that a statutory basis supported termination of her parental rights.[2]

We address each argument in turn.

## I. The district court did not violate mother's right to due process.

Mother first asserts that the district court violated her right to due process by

conducting a default proceeding on the TPR petition after mother failed to appear for trial.[3]

"Whether a parent's due-process rights have been violated in a termination proceeding is a

question of law, which this court reviews de novo." *In re Welfare of Child. of B.J.B.*,

747 N.W.2d 605, 608 (Minn. App. 2008).

Before the district court, mother's attorney did not argue that proceeding by default

would violate mother's right to due process.[4] Because mother did not present her

---

[2] Mother is not challenging the district court's related finding that termination is in the best interests of the children.

[3] In her principal brief, mother also argues that the district court erred when it found that service of the TPR petition on mother by publication was proper. On reply, however, mother acknowledges that she waived service by voluntarily appearing at the admit/deny hearing and at a pre-trial hearing. *See* Minn. R. Juv. Prot. P. 53.02, subd. 4 ("Service is waived by voluntary appearance in court or by a written waiver of service filed with the court."). Therefore, we need not address mother's argument regarding service by publication.

[4] On the day of the scheduled trial, mother's attorney opposed MNPrairie's motion to proceed by default based on mother's failure to appear and he requested a continuance of the trial date, explaining that he was not prepared to go to trial because mother had not responded to his recent efforts to contact her. Counsel did not specifically argue that due

due-process argument to the district court, we conclude that mother has forfeited this argument. *See In re Welfare of Child. of Coats*, 633 N.W.2d 505, 512 (Minn. 2001) (providing that appellate courts generally "consider only those issues that were presented and considered by the [district] court"); *see also In re Welfare of Child. of D.F.*, 752 N.W.2d 88, 97 (Minn. App. 2008) (concluding that parent waived a due-process argument in a TPR appeal when the argument was not made before the district court).

But even if the argument were properly before us, mother would not prevail. A district court is authorized to proceed by default in circumstances such as those presented in this case. Under Minnesota law, when a parent fails to appear at trial in a juvenile-protection proceeding after proper service (or waiver thereof), "the [district] court may receive evidence in support of the petition or reschedule the hearing." Minn. R. Juv. Prot. P. 18.01. If the TPR petition then is proven by clear and convincing evidence, the district court may grant the relief sought in the petition. Minn. R. Juv. Prot. P. 18.02. Additionally, a judgment entered after a default proceeding "will be held void for want of due process only where the circumstances surrounding the trial are such as to make it a sham and a pretense rather than a real judicial proceeding." *Coats*, 633 N.W.2d at 512 (quotation omitted). When a district court considers testimony and evidence supporting a TPR petition and bases its termination decision on the statutory factors and the best interests of the child (rather than the parent's failure to appear), the proceeding is a "real

---

process necessitated a continuance. The district court declined to continue the hearing, in part because mother was aware of the trial date.

10

judicial proceeding," not a "sham or a hoax." *In re Welfare of Child of L.W.*, 644 N.W.2d 796, 797 (Minn. 2002) (quoting *Coats*, 633 N.W.2d at 512).

The district court did not violate mother's right to due process by proceeding by default after mother failed to appear. Consistent with rules 18.01 and 18.02, the district court considered evidence and testimony in support of the TPR petition and based its decision on the proper statutory factors. *See* Minn. Stat. §§ 260C.301, subds. 1(b), 7, 8, .317, subd. 1. In other words, the district court followed proper procedure and conducted a "real judicial proceeding," in keeping with due process. *L.W.*, 644 N.W.2d at 797.

We are not persuaded otherwise by mother's argument that she was deprived of due process because the district court did not give her attorney "an affirmative opportunity to participate" in the default hearing "except to weigh in on whether the district court should proceed by default." Notably, mother's counsel remained in the courtroom but did not request an opportunity to cross-examine witnesses during the hearing. Nor did he ask to present any evidence. And, under the applicable court rule, the district court was only required to receive evidence from MNPrairie in support of the petition. Minn. R. Juv. Prot. P. 18.01. Under these circumstances, we discern no violation of due process by the district court. Thus, mother's due-process argument is unavailing.

II. **The district court did not clearly err in its determination regarding reasonable efforts.**

Mother next argues that the district court clearly erred in its factual findings regarding whether MNPrairie made reasonable efforts to reunify mother with the children. We review the district court's reasonable-efforts determination for "clear error" because it

is a factual finding. *In re Welfare of Child of J.H.*, 968 N.W.2d 593, 600-01 (Minn. App. 2021), *rev. denied* (Minn. Dec. 6, 2021). A finding is clearly erroneous when it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). "In applying the clear-error standard, we view the evidence in a light favorable to the findings" and will not determine that the district court clearly erred unless "we are left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted).

The district court made two separate findings regarding reasonable efforts toward reunification. First, the district court found that MNPrairie made reasonable efforts toward reunification "in the prior child protection case." Second, the district court found that "MNPrairie was not required to make reasonable efforts *in this case* because, in the circumstances of this case, the provision of services for purpose of reunification was futile and unreasonable under [section] 260.012(a)(7)." (Emphasis added.)

Mother does not challenge the district court's finding that further reunification efforts would have been futile in this case. Rather, mother argues that the district court erred when it determined that MNPrairie made reasonable efforts toward reunification in the previous CHIPS case. We conclude that this argument is misguided because it does not focus on the finding that the district court made for purposes of this case.

Minnesota law requires a district court to make one of two findings before terminating parental rights. Minn. Stat. § 260C.301, subd. 8. The district court must find *either* that the responsible social-services agency made reasonable efforts to reunify the

12

family in the termination case *or* that reasonable efforts are not required "as provided under section 260.012." *Id.* Section 260.012, in turn, provides that reasonable efforts are not required in certain circumstances, including when the district court determines that "the provision of services or further services for the purpose of reunification is futile and therefore unreasonable under the circumstances." Minn. Stat. § 260.012(a)(7), (h) (2022); *In re Welfare of Child. of A.D.B.*, 970 N.W.2d 725, 730 (Minn. App. 2022).

Here, the district court found that MNPrairie was not required to make reasonable efforts toward reunification because, in the circumstances of this case, the provision of reunification efforts was futile and therefore unreasonable, as provided under section 260.012. *See* Minn. Stat. § 260.012(h).[5] This finding is supported by the record, which shows that mother failed to complete several drug-treatment programs, was inconsistent in managing her mental health, failed to bring the children to school and daycare, was inconsistent in attending visits with her children, was sometimes volatile during these visits, and did not accompany her children to most of their medical

---

[5] Generally, a district court may not determine that further reasonable efforts would be futile until the responsible social services agency files a request for a prima facie determination of futility. *See A.D.B.*, 970 N.W.2d at 733; *see also In re Welfare of Child of P.A.T.*, No. A22-0012, 2022 WL 2195725, at *7 (Minn. App. June 20, 2022) (providing that *A.D.B.* "stands for the proposition that a district court cannot make a posttrial finding of futility"), *rev. denied* (Minn. Aug. 9, 2022). The record before us reflects that the district court first determined that further reasonable efforts would be futile in an order in the related CHIPS case. The district court took judicial notice of that CHIPS order in the TPR order. On appeal, mother does not challenge the district court's decision to take judicial notice of the CHIPS order. Nor does she argue that the futility determination in the TPR order is contrary to this court's decision in *A.D.B.* We generally do not address issues that are not presented to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Accordingly, we decline to consider the timing of the district court's futility determination in this case.

appointments. We therefore conclude that the district court satisfied its obligation under section 260C.301, subdivision 8. *See Kenney*, 963 N.W.2d at 222 (providing that an appellate court does not need to engage in "an extended discussion of the evidence to prove or demonstrate" that the district court's findings were correct (quotation omitted)).[6]

## III. The district court did not abuse its discretion by concluding that one or more statutory grounds supports termination of mother's parental rights.

Finally, mother argues MNPrairie failed to prove by clear and convincing evidence that one or more statutory grounds supports termination of her parental rights. This argument also is unavailing.

To terminate parental rights, the district court must find one or more statutory grounds for involuntary termination set forth in section 260C.301 has been proven to exist. Minn. Stat. § 260C.301, subd. 1(b)(1)-(9) (2022); *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 137 (Minn. 2014). When reviewing a decision to terminate parental rights, an appellate court will affirm if clear and convincing evidence supports at least one of the statutory grounds found by the district court. *In re Child. of T.A.A.*, 702 N.W.2d 703, 708 (Minn. 2005). If the record supports at least one statutory ground, we need not consider whether the record supports other statutory grounds found by the district court. *See id.* ("Only one [statutory] ground must be proven for termination to be ordered.").

---

[6] To the extent there is any error in the district court's finding regarding reasonable efforts in the CHIPS case, that error is harmless because such a finding relates to a separate case and therefore must be ignored. *See* Minn. R. Civ. P. 61 (requiring that harmless error be ignored); *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 98 (Minn. 1987) ("Although error may exist, unless the error is prejudicial, no grounds exist for reversal.").

In the TPR order, the district court found that clear and convincing evidence supported four statutory grounds for termination identified in the TPR petition: (1) substantial, continuous, or repeated refusal or neglect to comply with parental duties; (2) palpable unfitness to care for the children; (3) failure to correct the conditions leading to the children's out-of-home placement; and (4) the children are neglected and in foster care. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (5), (8). Mother argues that the district court abused its discretion when it concluded that MNPrairie had proven each of these statutory grounds.

We focus our analysis on the first statutory ground set forth in MNPrairie's petition—failure to comply with parental duties. Under this statutory ground, a district court may involuntarily terminate parental rights if the court finds "that the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed" by the parent-child relationship and "either reasonable efforts by the social services agency have failed to correct the conditions that formed the basis of the petition or reasonable efforts would be futile and therefore unreasonable." *Id.*, subd. 1(b)(2). In particular, "[t]he court must find that at the time of termination, the parent is not presently able and willing to assume his responsibilities and that the parent's neglect of these duties will continue for a prolonged, indeterminate period." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 90 (Minn. App. 2012) (quotation omitted).

In its order, the district court determined that MNPrairie proved, by clear and convincing evidence, that mother refused or failed to comply with the duties of the parent-child relationship. To support this determination, the district court found that

15

mother had a history of leaving the children home alone while she went out to use drugs or drink. The district court also found that mother used drugs in the home, that one of the children found cocaine in mother's bedroom, and that mother sometimes used drugs for several days in a row, causing her to lose consciousness. The district court found that mother's chemical dependency placed financial strain on the family and prevented her from paying her bills. And the district court found that mother's chemical dependency and mental-health issues prevented her from taking the children to school and daycare and attending to their needs. Based on these findings, the district court determined that mother "is unwilling or unable to address her mental health and chemical health in a manner that would allow her to meet her children's needs."

These findings are supported by the record. The MNPrairie social workers and GAL testified that mother is incapable of caring for the children because she is either unable or unwilling to maintain sobriety and manage her mental health. The social workers' case notes show that the agency received multiple reports that mother left the children home alone to use drugs, and these reports are corroborated by the social workers' testimony. Finally, the social workers' case notes show that the agency received multiple reports that Child B frequently missed school, resulting in learning delays for Child B.[7] Testimony at trial corroborates these reports. Because the record amply supports the district court's findings, we conclude that the district court did not abuse its discretion when it determined that clear and convincing evidence supported termination of mother's parental rights to

---

[7] Child S was an infant at the time and not in school.

16

Child B and Child S based on her failure to fulfill parental duties. *See* Minn. Stat. § 260C.301, subd. 1(b)(2). It is therefore unnecessary for us to consider mother's arguments regarding the other three statutory grounds found by the district court. *See T.A.A.*, 702 N.W.2d at 708.

In sum, we discern no basis to reverse the district court's decision terminating mother's parental rights to Child B and Child S.

**Affirmed.**